**Sarah SITLINGTON and Thomas O. Sitlington, Appellants,**

v.

**Robert FULTON and Ruby May Fulton, Appellees.**

**No. 6788.**

United States Court of Appeals
Tenth Circuit.

Dec. 15, 1961.

Charles P. Ames, of Ames, Daugherty, Bynum, Black & Rogers, Oklahoma City, Okl. (Phil E. Daugherty, Oklahoma City, Okl., on the brief), for appellants.

Owen Vaughn, of McElroy & Vaughn, Chickasha, Okl. (Clarence McElroy, Chickasha, Okl., on the brief), for appellees.

Before MURRAH, Chief Judge, and PICKETT and HILL, Circuit Judges.

PICKETT, Circuit Judge.

This action for specific performance and damages grows out of a contract to purchase real estate in Grady County, Oklahoma, and is here for the second time. On the first appeal the judgment was reversed, and the case remanded for a new trial on the question of damages. Sitlington v. Fulton, 10 Cir., 281 F.2d 552. The facts are set forth in the former opinion, and need not be repeated here in detail.

On the first appeal it was held that the purchasers, the plaintiffs below, had a right of action for damages for the delay in the performance of the contract by the sellers, the defendants below, and that a cause of action for damages had accrued to the sellers when the purchasers refused to comply with the terms of the

contract. Upon retrial the trial court found that the purchasers had suffered damages in the sum of $1500, the value of the use of the land during the time that they were wrongfully deprived of its possession. The reason for the failure to deliver possession of the premises was that, at the time the contract was entered into, the defendants had a partner who was operating a dairy on the premises, and refused to vacate them. The court also awarded damages to the defendants on their counterclaim in the sum of $2504, the amount expended by the defendants in removing their partner and providing complete possession for the plaintiffs. Judgment was entered for the defendants in the sum of $1004, the difference between the two awards. The defendants appeal contending that the evidence does not sustain the $1500 award to the plaintiffs, and that the defendants' damages were not allowed in conformity with the views of this court on the former appeal.

The evidence is undisputed that the plaintiffs were entitled to complete possession of the property on January 17, 1956, and complete possession was not tendered until May 22nd of the same year. The only evidence in the record as to the value of the use of this property during that period was the testimony of one of the plaintiffs, an experienced farmer, who testified that such value was $1500. This was adequate to sustain the award to the plaintiffs.

In addition to the award made to them by the court, the defendants assert that they are entitled to damages, in the sum of $11,737.50, resulting from a sale held on the premises on February 24, 1956. These damages they attribute to the cost of conducting the sale, a loss sustained on the sale of 101 head of dairy cattle, a loss sustained on the sale of some silage, and the loss of profits from the operation of the dairy. The basis for this claim is that, except for the contractual requirement that they deliver complete possession to the plaintiffs, the sale would not have been held at that time, but would have been held later in the year when prices would have been better. They assert that the sale on February 24th was "out of season," and the low prices bid resulted in the sale losses complained of, and, of course, if the sale had not been held, the profits from the dairy would have continued.

Although there was evidence to the effect that generally dairy cattle sold at a higher price in the fall of the year than at an earlier date, it appears that the sale of the cattle and silage on February 24th was the result of an agreement between the defendants and their partner. The record is replete with evidence that the partnership arrangement was unsatisfactory, but that it could not be dissolved and possession of the premises obtained without a sale of the cattle and other personal property. The partner testified that he was the owner of one-half of the cattle and other personal property, and that the defendants refused to submit an accounting. The denial by the trial court of the alleged loss growing out of this sale was warranted upon a conclusion that the sale was not brought about because of the contract to purchase, but to settle the partnership dispute.[1]

Furthermore, the record discloses that substantially all of the cattle were bid in at the sale by the partner or by the de-

1. The defendant, Mrs. Sitlington, testified: "I had told them in the office that day that Ledbetter had called me the 16th of December of '55 and said he was going to leave the place and he said if I don't want a lot of spoiled bags on cows to come on down and he was going down and cut them right down the middle. And I said, Jack, you can't do that because you haven't paid for them yet. And he said, well, you just see if I can't. And I said well, do you want a sale that will settle this deal off and he didn't reply. And I asked him that question three times. And I got no reply. And I said I will be down this afternoon and I went to this place that afternoon and I said it looks like the only way we can settle it is to go ahead and have a sale. And he didn't say much about it. He didn't want the sale and he said he didn't want to tell me over the phone and when I saw him in person, he said he didn't want a sale."

fendants, and that the producing dairy cows remained on the farm until sometime later when the dispute between the defendants and their partner was finally concluded by court action, and the cattle in the possession of the partner were sold at a receiver's sale. Neither the purchaser at the receiver's sale nor the sale price is shown by the record. The value of dairy cows, at any time of the year, was shown to depend primarily upon their condition, breeding, age, and when they would calve. Of the 101 head of cattle apparently involved in this sale, it was not shown how many were calves, heifers or dry cows, or how many were producing cows that had calved recently, or how many were expected to calve later in the year when the price would be better. There was no evidence of the value of these particular cattle at the time of either sale, or of the price that like cattle would sell for in the fall of the year, nor was there evidence that they could not have been replaced without loss. As to the silage, a sale was not necessary since the contract provided that, if it could not be sold at a reasonable price, the defendants had the right to use it on the premises under prescribed conditions. With respect to the loss of profits and the cost of conducting the sale, these items are disposed of by the conclusion as to the reason for the sale.

Defendants also urge that the trial court erred in disallowing their $10,000 claim for damages to the land while it was partially in the possession of the plaintiffs. During this period the United States Soil Conservation Service entered upon the land to fill in a gully and construct a pond and, in the process, destroyed a number of trees. There is evidence that during the period while the partner's refusal to vacate the premises prevented the closing of the contract, the defendants consented to this program, and directed their tenant partner to permit the Soil Conservation personnel to enter upon the premises for this purpose. In addition the evidence is wholly unsatisfactory and inadequate to establish the claim. There is a wide disparity with respect to the number of trees destroyed, what kind of trees they were, and whether they were alive or dead at the time they were removed.

■ With respect to each of the defendants' claims, the evidence contained in the record is not of such character that we can conclude that the failure of the trial court to find that the defendants were damaged in the manner asserted was clearly erroneous. Fed.R.Civ.P. 52 (a), 28 U.S.C.A.; Denver United States Nat. Bank v. Asbell Bros. Const., 10 Cir., 294 F.2d 289; United States v. Horsfall, 10 Cir., 270 F.2d 107; St. Paul-Mercury Indem. Co. v. United States, 10 Cir., 238 F.2d 917. We see no merit in the contention that the trial court erred in refusing to award judgment for the cost of the extension of the abstract or for the cost of printing briefs on the first appeal.

Affirmed.